# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-0845V
Filed: January 27, 2016
Unpublished

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
GLORIA KEYES,                          *
                                       *
              Petitioners,             *     Finding of Fact; Vaccination Site;
v.                                     *     Special Processing Unit ("SPU")
                                       *
SECRETARY OF HEALTH                    *
AND HUMAN SERVICES,                    *
                                       *
              Respondent.              *
                                       *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Paul Brazil*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Ann Martin*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

On August 7, 2015, Gloria Keyes ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et seq, (the "Vaccine Act" or "Program"). Petitioner alleges that as a result of an influenza vaccination she received on November 24, 2014, she suffered a left shoulder injury diagnosed as tendonitis and disorders of bursae and tendons in the shoulder region. Petition at 1. The case was assigned to the Special Processing Unit ("SPU").

## I.     Procedural History

An initial status conference was held on September 18, 2015, with the staff attorney managing this case. During the status conference it was noted that the vaccination record indicates that the vaccination was administered to petitioner's right arm, rather than to her left arm, as alleged. Petitioner's counsel acknowledged this

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

discrepancy, but believed the notation was a scrivener's error. He agreed to obtain an affidavit from petitioner addressing the issue.

Petitioner submitted her affidavit on November 11, 2015. Therein she stated that she "distinctly remember[ed] the positioning of the nurse and [her]self when the vaccine was performed: [She] was seated with the nurse standing to [her]left. [The nurse] injected the vaccine into the top part of [her] left shoulder." Pet. Ex. 5 at ¶ 3. She recalled "immediately [feeling] jolting pain at the vaccination site[, which] got progressively worse over the following weeks[,]" causing her "to seek treatment from [her] family doctor." *Id.* at ¶ 4.

On December 3, 2015, respondent filed a status report requesting that the undersigned "issue a written fact ruling determining the site of vaccination." Res. Status Rep. at 2. Respondent stated that her "position on the case depends on the resolution of this factual issue." *Id.*

## II.   Facts

Petitioner received an influenza vaccination on November 24, 2014, at a Walmart Pharmacy located in New Jersey. Pet. Ex. 1; Petition at ¶ 3. The vaccination record indicates it was administered in petitioner's right arm. Pet. Ex. 1.

On December 17, 2014, petitioner presented to the office of her primary care physician complaining of "[l]eft arm pain since getting flu shot at Walmart on 11/24." Pet. Ex. 2 at 44. She stated that the "pain [was] high in shoulder area where shot was given." *Id.* The pain was "localized to shoulder and upper arm, [with] no radiating pain down to hand, [and no] numbness or tingling. *Id.* Physical examination revealed "left arm with slight decreased range of motion secondary to stated pain when attempting to lift arm up to shoulder level, able to twist arm, strength is good throughout arm and hands, no palpated pain, slightly edematous upper shoulder area without erythema or rash. No bursa pain noted." *Id.* at 45. She was diagnosed with left extremity pain and prescribed an oral steroid. *Id.*

On January 8, 2015, petitioner returned to her primary care physician for a routine checkup and complained of continued pain in her left shoulder. Pet. Ex. 2 at 47. She reported that her arm felt "much better" while on the steroids, but that the pain returned shortly after she stopped taking the medication. *Id.* Physical examination revealed "left arm with slight decreased range of motion . . . with some slight pain noted at deltoid shot site. No anterior and posterior bursa pain." *Id.* at 48. She was again diagnosed with left extremity pain and offered a small dosing of steroids. *Id.* at 49. Petitioner declined the prescription, opting instead to try stretching and icing. *Id.*

On March 3, 2015, petitioner followed up with her primary care physician regarding her left shoulder pain and decreased arm strength. Pet. Ex. 2 at 55. She also complained of "radiating pain now almost to elbow." *Id.* Physical examination revealed slightly decreased extension/pull strength and decreased range of motion with

2

certain movements.  *Id.* at 57.  There were no palpable deformities and no pain with palpation, but petitioner reported a "slight discomfort."  *Id.*  Petitioner was diagnosed with "Pain Joint Shoulder Region" and prescribed a two-week course of Naproxen.  *Id.*  She also received a referral to see a neurologist.  *Id.*

On March 12, 2015, petitioner presented to a neurologist for an evaluation of "pain in left arm after flu shot [in] November."  Pet. Ex. 3 at 9.  He conducted a thorough physical examination, revealing "tenderness of the tendon of the left triceps with pain on abduction."  *Id.* at 5.  He diagnosed petitioner with tendinitis of the left triceps or deltoid and advised that she undergo a course of physical therapy.  *Id.*

On April 14, 2015, petitioner presented to her primary care physician for a routine checkup, where she again complained of persistent left shoulder pain.  Pet. Ex. 2 at 61.  She also reported that her physical therapy was to begin in about one week.  *Id.*

On May 7, 2015, petitioner underwent an initial evaluation for physical therapy and received diagnoses of left shoulder joint pain and disorders of bursae and tendons in shoulder region.  Pet. Ex. 2 at 70.  The therapist assessed petitioner's potential for rehabilitation as good and recommended an initial course of twelve visits.  *Id.* at 73.

## III.   Discussion

The undersigned has reviewed the record and finds preponderant evidence to support petitioner's claim that the flu vaccine she received on November 24, 2014, was administered to her left arm.

Although the immunization record itself clearly indicates that the vaccine was injected in petitioner's right arm, all of the other evidence of record strongly suggests that it was given in her left arm, as she alleges.  The undersigned observes that from petitioner's initial treatment onward, she consistently reported that her left shoulder problem began after the November 24, 2014 flu vaccination.  Indeed, no record other than the vaccine record makes any reference to the vaccine having been administered to the right arm (nor do the records note any complaint or injury pertaining to the right arm).  Additionally, the undersigned accepts petitioner's affidavit as a credible account of her vaccination, having found no reason to doubt the truthfulness of her assertions.

## IV.   Conclusion

Accordingly, for the forgoing reasons, the undersigned finds that petitioner in fact received the November 24, 2014 influenza vaccination in her left shoulder.

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master
